UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.L. ANDERSON & SONS, INC., *et al.*,<br><br>Plaintiffs,<br>v.<br><br>PACCAR, INC., *et al.*,<br><br>Defendants. | CASE NO. C18-0742-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 46) Plaintiffs' amended complaint (Dkt. No. 43). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I. BACKGROUND

### A. The Parties

Plaintiff Santoro Transportation, Inc. ("Santoro") is a California corporation with its principal place of business in California. (*Id*.) Plaintiff S.L. Anderson & Sons Corp. ("Anderson") is a Wisconsin corporation with its principal place of business in Wisconsin. (Dkt. No. 43.) Defendant PACCAR, Inc. ("PACCAR") is a Delaware corporation with its principal place of business in Washington. (*Id*.) Defendants PACCAR Engine Company ("PEC"),

Kenworth Truck Company ("Kenworth"), and Peterbilt Motors Company ("Peterbilt") are divisions or subsidiaries of Defendant PACCAR, with their principal places of business in Washington. (*Id*.)

**B. The Engines**

Defendants manufacture and sell heavy-duty commercial vehicles. (*Id*.) Beginning in 2010, Defendants began to manufacture PACCAR MX-13 diesel engines ("Engines"). (*Id*.) The Engines incorporate an aftertreatment system ("ATS") that Defendants have previously included in other vehicles. (*Id*.) In order to meet the Environmental Protection Agency's ("EPA") 2010 Heavy-Duty On Highway Emissions Standard ("2010 Standard"), Defendants designed, manufactured, sold for profit, and warranted Engines with an Emissions Aftertreatment System (EAS) emissions control unit. (*Id*.) The EAS includes an exhaust gas recirculation ("EGR") component that assists in altering the temperature and composition of the exhaust. (*Id*.)

In a 2010 annual report, Defendants reported that the Engines were certified by the EPA and the California Air Resources Board. (*Id*.) Defendants stated that the Engines were durable, high-performing, and efficient. (*Id*.) In a 2014 annual report, Defendants reported that their Mississippi factory had produced a record number of Engines and that over 75,000 Engines had been installed since 2010. (*Id*.) Defendant Kenworth installs Engines in over 35 percent of its trucks. (*Id*.) Defendants' marketing material has stated "that the Engine has a B10 design life of 1,000,000 miles," and that the Engines' reliability and durability have been rigorously tested. (*Id*.)

**C. Alleged Engine Defect**

The amended complaint asserts that a defect in the Engines, of which Defendants were aware, causes vehicles containing the Engines ("Vehicles") to not function consistently or reliably, even following repeated warranty repairs and replacements. (*Id*.) The EAS and related systems continuously monitor Vehicles and, upon detection of a malfunction, trigger a malfunction indicator and produce a fault code that is stored in the Engine Control Module

("ECM"). (*Id*.) The ECM then "derates or reduces the Vehicle's engine power, when required to protect the Engine and ATS." (*Id*.)[1]

The fault codes are used by Defendants to identify issues while performing repair work. (*Id*.) Defendants require that repair work on Engines be done at Defendants' authorized dealers. (*Id*.) The amended complaint alleges that Plaintiffs and others Class members have suffered performance and reliability problems arising from the defect in the Engines, which produces numerous fault codes that require servicing. (*Id*.)

### D. Defendants' Knowledge

The amended complaint alleges that since 2009, prior to beginning to sell the Engines, Defendants knew or should have known that the EAS and related systems were not sufficiently robust to meet Defendants' representations about their reliability and durability, that the Engines and EAS were experiencing failures, and that frequent repairs would be required. (*Id*.) After 2010, Defendants tracked emissions-related warranty claims and data collected from ECMs, and received complaints about the Engines shortly after beginning to sell them. (*Id*.) In response, Defendants issued technical service bulletins and commenced warranty campaigns, and authorized minor adjustments or replacement of failed components. (*Id*.) Although Defendants knew or should have known about the defects, they failed to disclose the defects to Plaintiffs and other Class members. (*Id*.)

### E. Engine Warranty

Upon sale of a Vehicle, Defendants automatically provide a Base Warranty covering the applicable Engine in the Vehicle's operations manual, which lasts for 24 months, 250,000 miles,

---

[1] In their motion to dismiss, Defendants allege that the ATS is designed to induce Vehicle drivers to comply with the 2010 Standard through "a sequence of driver alerts and engine controls of escalating intensity," including dashboard indicator lamps and reductions in the Vehicles' power. (Dkt. No. 46 at 3–7.) These facts are beyond the scope of the amended complaint, and thus are not properly before the Court in considering Defendants' motion to dismiss.

or 6,250 hours. (*Id*.; Dkt. No. 46-1.)[2] The Base Warranty defines "Warrantable Failures" as defects in material and factory workmanship; if a Warrantable Failure occurs, the Base Warranty states that Defendants will provide the parts, components, or labor required to repair resultant damage to the Engine. (*Id*.) The Base Warranty extends only to the first purchaser of a Vehicle, and limits the damages that may be recovered. (*Id*.) The Base Warranty disclaims any express or implied warranties not included in the Base Warranty, and states that the person subject to the Base Warranty must bring a legal claim arising from the purchase or use of the Engine within 12 months from when the legal claim accrues. (Dkt. No. 46-1 at 2.) The Base Warranty disclaims all incidental and consequential damages. (*Id*.)

Defendants performed numerous repairs of Vehicles pursuant to the Base Warranty. (*Id*.) They have not rejected a request to repair an emissions-related defect pursuant to the terms of the Base Warranty. (*Id*.) But the repair work done on the Vehicles failed to correct the underlying defect. (*Id*.)

**F. Plaintiffs' and the Class's Experience**

Plaintiffs' Vehicles have repeatedly broken down or suffered shutdowns, which have necessitated delivering the Vehicles to Defendants' authorized dealers for emissions warranty repair work. (*Id*.)[3] Even after warranty repair work was performed, Plaintiffs' Vehicles continued to exhibit illuminated warning lights; Engines derated or shut down; and Plaintiffs experienced problems with sensors, injectors, and dosers, and other system failures. (*Id*.) These issues,

---

[2] The amended complaint references the Base Warranty and states that it is attached to the amended complaint as "Exhibit B," but the document was not included with the amended complaint. (*See* Dkt. No. 43.) Defendants have included a copy of an applicable Base Warranty as an attachment to their motion to dismiss. (Dkt. No. 46-1.) The Court may consider certain documents, including those "attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" without converting a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[3] In August 2011, Plaintiff Santoro purchased five of Defendant Kenworth's Vehicles for approximately $138,475 each. (Dkt. No. 43.) In September 2011, Plaintiff Santoro purchased four of Defendant Peterbilt's Vehicles for approximately $139,432 each. (*Id*.) In July 2015, Plaintiff Anderson purchased three of Defendant Kenworth's model year 2012 Vehicles. (*Id*.)

ORDER
C18-0742-JCC
PAGE - 4

combined with the unavailability of required parts at authorized service centers, have caused the Vehicles to be out of service for extended periods of time. (*Id*.) Further, market knowledge of the issues have resulted in a diminution in the resale value of the Vehicles. (*Id*.) Plaintiffs would have either not purchased the Vehicles or would have paid less for the Vehicles but for Defendants' omissions and misrepresentations related to the Vehicles. (*Id*.)

Plaintiffs filed a class action lawsuit on behalf of themselves and others similarly situated (*Id*.) Plaintiffs' amended complaint alleges that Defendants violated the Washington Consumer Protection Act ("CPA"), Revised Code of Washington section 19.86, and breached an express warranty in violation of Revised Code of Washington section 62A.2-313. (*Id*.) In the alternative, Plaintiff Santoro and the California Class members allege that Defendants violated California Commercial Code section 2313 and violated the California Unfair Competition Law ("UCL"), California Business and Professions Code section 17200. (*Id*.) In the alternative, Plaintiff Anderson and the Wisconsin Class members allege that Defendants breached an express warranty in violation of Wisconsin Uniform Commercial Code section 402.313. (*Id*.) Defendants move to dismiss Plaintiffs' amended complaint for failure to state a claim. (Dkt. No. 46.)

## II.     DISCUSSION

### A.     Federal Rule of Civil Procedure 12(b)(6) Legal Standard

The Court may dismiss a complaint that "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

A plaintiff is obligated to provide grounds for his or her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8

announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

### B. Statute of Limitations

"An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." Wash. Rev. Code § 62A.2-725(1); *accord* Cal. Com. Code § 2725(1); *see Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1319 (W.D. Wash. 2014). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Wash. Rev. Code § 62A.2-725(2); *accord* Cal. Com. Code § 2725(2). If a warranty "explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id*. "This section does not alter the law on tolling of the statute of limitations . . . ." Wash. Rev. Code § 62A.2-725(4); *accord* Cal. Com. Code § 2725(4). Generally, an action for violation of the CPA or UCL must be brought "within four years after the cause of action accrues." Wash. Rev. Code. § 19.86.120; Cal. Bus. & Prof. Code § 17208.

In Washington, equitable tolling may be applied by the court "when justice requires," as upon a finding of "bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998); *accord Lantzy v. Centex Homes*, 73 P.3d 517, 523–24 (Cal. 2003). A motion to dismiss based on the running of the statute of limitations will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

The amended complaint alleges that Defendants were aware of the defect in the Engines as early as 2009, and possessed exclusive knowledge or access to material facts about the Engines that were not known or reasonably discoverable by Plaintiffs. (Dkt. No. 43 at 3–4, 8–9.)

The amended complaint further asserts that when Plaintiffs repeatedly brought Engines in for warranty repair work, Defendants represented that the issues were warrantable and that the EAS issues were corrected following the repairs. (*Id*. at 19–20.) The amended complaint asserts that Defendants knowingly and actively misrepresented the nature of the defect and the efficacy of the warranty repair work. (*Id*. at 19.) The amended complaint explicitly pleads that equitable doctrines apply to the present case and toll the applicable statutes of limitation. (*Id*. at 20) (pleading doctrines of equitable tolling, equitable estoppel, and fraudulent concealment). Taking the factual allegations in the amended complaint as true, as the Court must when ruling on a motion to dismiss, Plaintiffs may be able to establish that the Base Warranty's statute of limitations and the statutes of limitation under the CPA and UCL are subject to tolling. Therefore, Defendants' motion to dismiss is DENIED on this ground.[4]

### C. Rule 9(b) Pleading Standard

"In alleging fraud[,] . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Iqbal*, 556 U.S. at 686. Under the Rule 9(b) pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Even if the elements of a claim do not include fraud, an allegation of a "unified course of fraudulent conduct" requires that "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*. at 1103–04. "The Rule 9(b) standard is relaxed in fraudulent omission cases," as the plaintiff may not be able to specify the time, place, and specific content of an omission as

---

[4] Because the Court concludes that the amended complaint contains sufficient factual matter taken as true to lead to a reasonable inference that the applicable statute of limitations on Plaintiffs' breach of warranty claims may be subject to tolling, it declines to reach the parties' arguments concerning whether the Base Warranty was unconscionable or failed in its essential purpose as related to the Base Warranty's durational limits. (Dkt. Nos. 46 at 13; 51 at 13–15; 52 at 4.)

1 precisely as a plaintiff claiming false representation. *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010).

The amended complaint alleges that Defendants were aware of the defect in the Engines as early as 2009, prior to beginning to sell the Engines, and that Defendants still made false or misleading public representations about their reliability and durability. (Dkt. No. 43.) The amended complaint also asserts that Defendants continued to actively misrepresent the nature of the Engines' defect and the efficacy of Defendants' warranty repairs, and withheld material information from Plaintiffs and Class members. (*Id.*) Thus, the amended complaint pleads sufficient factual matter to satisfy the pleading requirement of Federal Rule of Civil Procedure 9(b). *See Vess*, 317 F.3d at 1106. Defendants' motion to dismiss is DENIED on this ground.

**D.    CPA**

To plead a plausible CPA claim, a plaintiff must allege facts that satisfy the following elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). "A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 894 (Wash. 2009).

Defendants focus on two elements to argue that Plaintiffs have not established a plausible claim under the CPA: an unfair or deceptive trade practice and public interest impact. (Dkt. No. 46 at 17.) The amended complaint's factual allegations, taken as true, satisfy both elements. First, the amended complaint alleges that Defendants misrepresented the quality of the Engines in their public statements and reports, and subsequently misrepresented the nature of the defect and the efficacy of warranty work when Plaintiffs repeatedly brought the Engines in for warranty repair work. (Dkt. No. 43.) These allegations are sufficient to establish a reasonable inference that Defendants engaged in an unfair or deceptive trade practice sufficient to support a private

CPA claim.

Second, the amended complaint asserts that Defendant PACCAR is "the third-largest manufacturer of medium- and heavy-duty trucks in the world" and sells tractor-trailer and vocational trucks throughout the United States. (*Id.* at 6.) In their annual reports, Defendants represented to the public that Defendants had produced a record number of Engines in 2014, including 75,000 installed in Defendant Kenworth and Defendant Peterbilt trucks since production began in 2010. (*Id.* at 9.) Defendants then actively misrepresented the nature of the defect and the efficacy of warranty repair work to both Plaintiffs and other members of the Class, which purportedly includes all individuals and entities who leased or purchased Vehicles. (*Id.* at 15–23.) Thus, the amended complaint leads to a reasonable inference that Defendants' alleged unfair or deceptive trade practice extended beyond any contracts between them and Plaintiffs and impacted the public interest. Defendants' motion to dismiss is DENIED on this ground.[5]

### E. Breach of Express Warranty

#### 1. Factual Sufficiency of Plaintiffs' Claims

Defendants argue that Plaintiffs have failed to state a claim for breach of express warranty because they improperly aggregate repairs to plead breach of express warranty. (Dkt. No. 46 at 22–23) (citing *Schultz v. Gen. R.V. Ctr.*, 2006 WL 2583140, slip op. at 11 (E.D. Mich. 2006), *aff'd,* 512 F.3d 754 (6th Cir. 2008); *Pidcock v. Ewing*, 435 F. Supp. 2d 657, 663 (E.D. Mich. 2006)). From the outset, the amended complaint states that the Vehicles are defective due

---

[5] Defendants rely on *Goodyear Tire & Rubber Co.* to argue that Plaintiffs' business experience removes their claim from the scope of public interest covered by the CPA. (Dkt. No. 46 at 16–17) (citing *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 635 (Wash. Ct. App. 1997)). *Goodyear* concerned alleged threats of increased competition and misrepresentation of market data directed toward specific business entities, and the court noted that "[w]hen the transaction is a private dispute, as it is here, and not a consumer transaction, it is more difficult to show public interest in the subject matter." *Goodyear Tire & Rubber Co.*, 935 P.2d at 635. This case concerns consumer transactions, and the amended complaint alleges that misrepresentations that were made to consumers with varying levels of sophistication. Therefore, *Goodyear* does not conclusively show that Plaintiffs are precluded from satisfying the public interest prong of their private CPA claim.

to constant failure of the EAS and its related systems. (Dkt. No. 43 at 3.) The amended complaint specifically asserts that the "Vehicle's [sic] defect and deficiencies stem from the EAS technology that renders the Vehicles unreliable transportation and unsuitable for ordinary commercial use," that the ATS's inherent deficiencies produce numerous fault codes that require servicing, and that the Engines suffer from sensor, injector, and doser problems, along with other system failures. (*Id*. at 10, 16.) The amended complaint further alleges that, "Defendants have exclusive knowledge or access to material facts about the Vehicles and their Engines," and that Plaintiffs could not know or reasonably discover these material facts. (*Id*. at 12.) The multitude of the alleged problems resulting from the alleged defect in the Engines does not render Plaintiffs' claims implausible or vague. Therefore, Defendants' motion to dismiss is DENIED on this ground.

Defendants also argue that Plaintiffs' breach of express warranty claims fail because the alleged defect was an intentional design feature and because Plaintiffs cannot premise their claims on repairs that were required after the Base Warranty expired. (Dkt. No. 46 at 23–24.) Defendants' arguments rely on facts beyond the amended complaint, *see Ritchie*, 342 F.3d at 908, and ignores that the amended complaint bases its breach of express warranty claims on the repairs required during the warranty period and Defendants' failure to make the Engines conform to the express warranty through repeated repairs. (*See* Dkt. No. 43 at 26–29, 31–32.) Defendants' motion to dismiss is DENIED on these grounds.

### 2. Plaintiff Anderson's Breach of Express Warranty Claim

The Base Warranty provides that, "The Engine warranty extends only to you, the First Purchaser." (Dkt. No. 46-1 at 2.) Defendants argue that Plaintiff Anderson cannot bring a breach of express warranty claim under Wisconsin law because it is not the first purchaser of the Vehicles at issue. (Dkt. No. 46 at 12.) Although the amended complaint does not explicitly state whether or not Plaintiff Anderson was the first purchaser, Plaintiffs concede in their response that Plaintiff Anderson is the second purchaser. (Dkt. No. 51 at 15.) Although Plaintiffs argue

ORDER
C18-0742-JCC
PAGE - 10

that Plaintiff Anderson has stated a plausible claim for breach of express warranty because Defendants have not established that the limitation is enforceable and because Plaintiffs have pled that the Base Warranty is unconscionable and fails its essential purpose (Dkt. No. 51 at 15), the amended complaint's arguments only challenge the durational and damage limitations of the Base Warranty. (*See* Dkt. No. 43 at 14–15.) Plaintiffs' offered case law is also unavailing. *See Kagan v. Harley Davidson, Inc.*, 2008 WL 1815308, slip op. at 8 (E.D. Pa. 2008) (noting that express warranty at issue allowed transfer to subsequent purchaser during warranty period, and concluding that the defendant would be entitled to summary judgment on plaintiff's breach of express warranty claim regardless because the plaintiff had not offered evidence establishing a third party claim for breach of express warranty under Pennsylvania law).

Therefore, the amended complaint does not establish that Plaintiff Anderson, as the second purchaser, has a plausible claim for breach of the Base Warranty. Defendants' motion to dismiss is GRANTED on this ground. Plaintiff Anderson's claim for breach of express warranty arising under Wisconsin law (*see* Dkt. No. 43 at 31) is DISMISSED without prejudice and with leave to amend. If Plaintiffs choose to file an amended complaint, they should offer, if they can, factual assertions and legal argument establishing either that the limitation of the Base Warranty to the first purchaser is unconscionable or that Plaintiff Anderson is entitled to bring a third party claim for breach of the Base Warranty under Wisconsin law.

**F.     UCL**

"The UCL is a remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (quoting *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.,* 973 P.2d 527, 540 (Cal. 1999)). The UCL prohibits "unfair competition," and "is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements)." *Id*. "Each prong of the UCL is a separate and distinct theory of liability." *Id*.

### 1. Unlawful Act or Practice

"By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns*, 973 P.2d 527, 539–40 (Cal. 1999) (internal quotations omitted). The amended complaint alleges that Defendants violated California's law governing express warranties, and provides numerous factual allegations in support of its claim. (Dkt. No. 43 at 27–29) (citing Cal. Com. Code § 2313). The amended complaint then states, "Defendants have violated the unlawful prong of § 17200 by its violations as set forth below." (*Id*. at 29.) Therefore, the amended complaint sets forth a plausible claim for relief under the unlawful prong of the UCL, and Defendants' motion to dismiss is DENIED on this ground.

### 2. Unfair Act or Practice

Several tests are used by California courts in determining whether an act or practice is "unfair" under the UCL; the Ninth Circuit looks to the "balancing test" and the "public policy test." *See Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 929 (N.D. Cal. 2015) (noting Ninth Circuit's rejection of California courts' use of the "FTC test" in the consumer context). The balancing test examines whether the plaintiff has alleged "that the harm to the public from the business practice is greater than the utility of the practice." *Id.* (citing *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010)). Courts generally do not grant motions to dismiss "unfair" UCL claims under the balancing test because it generally involves weighing evidence not yet before the court. *Id*. Under the public policy test, a plaintiff must allege "that a practice 'violates public policy as declared by 'specific constitutional, statutory or regulatory provisions.'" *Id*. (quoting *Rubio*, 613 F.3d at 1205 (internal quotations omitted)).

Plaintiffs have established a plausible claim for relief under the balancing test. The amended complaint sets forth numerous factual allegations concerning the harms suffered by Plaintiffs and the Class, and alleges that Defendants marketed the Engines and Vehicles broadly. (*See* Dkt. No. 43 at 6, 9, 15–18, 22–24.) In response, Defendants contend that these issues were

intentional design features as opposed to defects; as discussed above, these facts are not properly before the Court for the present motion to dismiss. *See Ritchie*, 342 F.3d at 908. Plaintiffs have also established a plausible claim for relief under the public policy test. The amended complaint alleges that the Engines failed to comply with the Base Warranty, and thereby asserts a claim arising under California's law governing express warranties. (Dkt. No. 43 at 27–29) (citing Cal. Com. Code § 2313). Thus, the amended complaint points to a public policy embodied in a statute and alleges that Defendants violated that public policy. Therefore, Plaintiffs have established a plausible claim for relief under the "unfair" prong of the UCL, and Defendants' motion to dismiss is DENIED on this ground.

### 3. Fraudulent Act or Practice

"A business practice is fraudulent under the UCL if members of the public are likely to be deceived." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). "The challenged conduct 'is judged by the effect it would have on a reasonable consumer.'" *Id*. (quoting *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (Cal. Ct. App. 2008)). "An essential element for a fraudulent omission claim is actual reliance." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). A plaintiff may establish actual reliance by proving "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id*. (quoting *Mirkin v. Wasserman*, 858 P.2d 568, 574 (Cal. 1993)). Reliance can be presumed when the omission is material, as when a reasonable consumer "would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id*. (quoting *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009)).

The amended complaint alleges that Defendants were aware of the defect in the Engines as early as 2009. (Dkt. No. 43 at 11–12.) The amended complaint further alleges that Defendants actively misrepresented the nature of the defect when performing warranty repair work and thereby "concealed the true character, quality, and nature of the Engine, including the defective nature of its EAS and the fact that the defect could not be effectively corrected." (*Id*. at 19–20.)

Further, although Plaintiffs are business entities, the purported Class contains individuals who leased or purchased Vehicles. (Dkt. No. 43 at 22.) The amended complaint asserts that, had Plaintiffs been aware of the alleged defect in the Engines or if Defendants had disclosed all material information regarding the defect, they would not have purchased the Vehicles or would have paid less for them. (Dkt. No. 43 at 17–18, 25.) Therefore, as Defendants' alleged actions would likely have affected a reasonable consumer and Plaintiffs have pled sufficient factual allegations to establish that they relied on Defendants' misrepresentations, the amended complaint has established a plausible claim for relief under the "fraudulent" prong of the UCL. Defendant's motion to dismiss is DENIED on this ground.

Defendants argue that Plaintiffs have failed to state a claim under the UCL based on an omission, but cite case law concerning an omission claim arising under California's Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1770, and whether a plaintiff's allegations are sufficient to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). (*See* Dkt. No. 46 at 21) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835–36 (Cal. Ct. App. 2006); quoting *Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, slip op. at 3 (C.D. Cal. 2012); citing *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).

In response, Plaintiffs offer authority concerning an omission claim arising under the CLRA, the sufficiency of a pleading to allege a fraudulent failure to disclose a known defect, analysis of an allegation of concealment of a known defect under the "fraudulent" prong of the UCL, and analysis of the sufficiency of an allegation of knowing concealment under New Jersey law. (See Dkt. No. 51 at 21–22) (citing *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 2015 WL 4591236, slip op. at 32 (D.N.J. 2015); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014); *T.J. McDermott Transp. Co. v. Cummins, Inc.*, 2015 WL 1119475, slip op. at 7 (D.N.J. 2015)).

It is unclear to the Court what cause of action Defendants seek to dismiss and Plaintiffs seek to save. The amended complaint does not plead a cause of action under the CLRA, as it neither cites the relevant statute nor requests a remedy arising under the CLRA. (*See* Dkt. No. 43 at 24–33.) To the extent that the amended complaint alleges a cause of action arising from an omission or knowing concealment of a defect by Defendants, it may be analyzed under the "fraudulent" prong of Plaintiffs' UCL claim, as discussed above. Further, also as discussed above, the amended complaint's factual allegations pertaining to Defendants' alleged fraud satisfy the heightened pleading standard set forth by Federal Rule of Civil Procedure 9(b). Therefore, Defendants' motion to dismiss is DENIED on this ground.

### 4. Entitlement to Relief

"The remedies available in a UCL . . . action are limited to injunctive relief and restitution." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009); Cal. Bus. & Prof. Code § 17203. "Injunctive relief is not available when there is no threat that the misconduct to be enjoined is likely to be repeated in the future." *In re Vioxx Class Cases*, 180 Cal. App. 4th at 130. "To show that she is entitled to restitution, a plaintiff must demonstrate that the defendant is in possession of money or property taken from her." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013). A party may be entitled to restitution "without proof that the funds were lost as a result of actual reliance on defendant's deceptive conduct," and may be measured as "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *Id*. at 130–31.

The amended complaint alleges that Defendants' "wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated in the State of California." (Dkt. No. 43 at 30.) Based on the amended complaint's allegation, Defendants may continue in their wrongful conduct into the future. The amended complaint also asserts that in August 2011, Plaintiff Santoro purchased five of Defendant Kenworth's Vehicles and in September 2011, purchased four of Defendant Peterbilt's Vehicles. (Dkt. No. 43 at 17.) The Court may draw a

reasonable inference from these allegations that Plaintiff Santoro bought these Vehicles directly from Defendants. The amended complaint goes on to allege that Plaintiffs would not have purchased the Vehicles or would have paid less for them had they been aware of the defect, that they have incurred costs from repeated warranty repairs, and that the value of the Vehicles has been diminished following market knowledge of the defect. (*See, e.g.*, Dkt. No. 43 at 3, 17–18, 25.) These factual allegations are sufficient to establish a plausible claim that Plaintiffs may be entitled to injunctive relief and restitution from Defendants. Therefore, Defendants' motion to dismiss is DENIED on this ground.

### G. Declaratory Relief

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); 28 U.S.C. § 2201(a). "A class action may be maintained . . . if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class actions . . . certified under Rule 23(b)(2) are not limited to actions requesting injunctive or declaratory relief, but may include cases that also seek monetary damages." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986).

The amended complaint seeks an award of damages and injunctive relief based on both Defendants' past misrepresentations and ongoing misconduct towards Plaintiffs and the Class. (Dkt. No. 43 at 24–33.) Plaintiffs' request for declaratory relief appears in the amended complaint's allegations concerning the purported Class, and alleges that "Defendants have acted or refused to act on grounds generally applicable to the Class." (*Id.* at 24.) The fact that Plaintiffs seek monetary damages does not preclude them from also requesting declaratory relief on behalf of the Class as a whole. *See Probe*, 780 F.2d at 780. Therefore, Defendants' motion to dismiss is DENIED on this ground.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 46) is GRANTED in part and DENIED in part. Plaintiff Anderson's claim for breach of express warranty is DISMISSED without prejudice and with leave to amend. If Plaintiffs choose to file an amended complaint, they must plead additional allegations to cure the deficiencies identified in this order. The amended complaint must be filed within 30 days of the issuance of this order. If filed, the amended complaint shall only include additional allegations regarding the claim that was dismissed without prejudice and with leave to amend.

DATED this 13th day of November 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE